STATE OF MINNESOTA, *ex rel.* DAVID E. SLIPP, *vs.* NEWTON McFADDEN.

May 29, 1876.

**Power of Legislature over Counties.**—Legislative power over counties is supreme, except as restrained by the constitution, either expressly or by necessary implication.

**Same—Act Disorganizing Cass County.**—The act of March 6, 1876, entitled " An act in relation to Cass county, and to attach the same to the county of Crow Wing," contravenes no provision of the constitution, and is a valid law. After the passage of such act, the county commissioners of Cass county had no power to remove the treasurer of such county, nor to fill the vacancy thereby created.

*Mandamus* to compel the delivery to the relator, who claimed to be the treasurer of Cass county, of the books, papers, etc., belonging to that office. From the alternative writ and the answer it appeared that Cass county was declared to be organized by Laws 1872, c. 79, pursuant to which act the county seat was located at West Brainerd. On March 15, 1876, the county commissioners, having caused an action to be brought against the then county treasurer as a defaulter, removed him from office, and appointed the relator to fill the vacancy, who qualified and gave bond as required by law. The former treasurer, thus removed, turned over the books, papers, etc., of the office, not to the relator, but to the respondent, who was the treasurer of Crow Wing county, and who refused to deliver them to the relator, claiming to hold them by virtue of the act entitled " An act in relation to the county of Cass, and to attach the same to the county of Crow Wing," approved March 3, 1876. Sp. Laws 1876, c. 208.[1]

[1] Section 1. That chapter 79 of the general laws of Minnesota for the year 1872, entitled "An act to provide for the organization of the county of Cass," be, and the same is hereby, repealed, and the functions of all officers elected or appointed under the provisions of said act shall cease from and after the passage of this act, excepting as hereinafter provided. * * *

Section 2. Said county of Cass is hereby attached to the county of Crow

*Davis, O'Brien & Wilson* and *D. O. Preston,* for relator.

*Bigelow, Flandrau & Clark* and *George Bradley,* for respondent.

CORNELL, J. The main question discussed by counsel, and presented for adjudication, is whether the act of March 3, 1876, entitled "An act in relation to Cass county, and to attach the same to the county of Crow Wing," which practically disorganizes the former, and attaches it to the latter county for judicial, record, and taxing purposes, is within or without the limits of legislative power under the state constitution. It cannot be doubted that the power of state legislation over counties is plenary and absolute, except as restricted by the constitution, either in express terms or by necessary implication. It is claimed that the act in question contravenes the provision of article 11, section 1, which is in these words: "The legislature may from time to time establish and organize new counties; but no new county shall contain less than four hundred square miles, nor shall any county be reduced below that amount; and all laws changing county lines in counties already organized, or for removing county seats, shall, before taking effect, be submitted to the electors of the county or counties to be affected thereby, at the next general election after the passage thereof, and be adopted by a majority of such electors. Counties now established may be enlarged, but not reduced below four hundred square miles."

It is quite clear that a distinction is here made between

Wing for record and judicial purposes, and for the levy and collection of state and other taxes, as hereinafter provided.

Section 4. All the public records of said county of Cass, and the safes and office furniture of said county, shall be forthwith transferred to, and kept in the possession of, said county of Crow Wing, for the use and benefit, and as the property, of said Cass county, and full settlement made between the officers of Cass county and the corresponding officers of Crow Wing county, and all funds, books, and appurtenances turned over as is now required by law between incumbents and their successors in county offices, and the records of said county of Cass shall be kept separate and apart from the records of said county of Crow Wing, and in the books now owned by the county of Cass.

an established and an organized county, while the power in the legislature to create either is expressly recognized. As to the latter, its boundary lines shall not be changed at all, except by a vote of the majority of the electors to be affected ; while, as to the former, the only restriction is that against reducing its territorial area below 400 square miles. So that this restriction is observed by the legislature, the boundaries of an unorganized county may be altered in any manner, according as its wisdom or caprice may suggest, without consulting or regarding the wishes even of the resident electors and inhabitants.

An established county, in the constitutional sense, is a territorial subdivision of the state, with certain prescribed boundaries, designated and set apart by legislative authority for the erection and creation of an organized county, with the powers and incidents pertaining to a *quasi* corporation of that character, whenever, in the judgment of the legislature, it shall contain the requisite population for that purpose. The manifest object sought in the establishment of such counties, in advance of settlement, is to secure to each a territorial area of sufficient size, and with suitable boundaries, to accommodate, when settled, its entire population ; to obtain efficient county governments ; and to avoid the evils supposed to be incident to their formation out of sparsely-settled districts, under the influence of local considerations having reference rather to the interests of some town site, expectant the advantages of a county seat, than the well-being of the whole. In furtherance of this object it was deemed necessary to prohibit the legislature from reducing the area of any county, organized or unorganized, below the standard fixed by the constitution ; also, from removing county seats, and from changing the boundaries of any organized county, without the consent of the people to be affected ; and this is the whole purport and effect of the limitations upon legislative power imposed by the section under consideration.

Outside these exceptions, the whole field of legislative power over counties and county governments is left open, and the authority of the legislature therein is supreme. It may at pleasure create, alter, modify, and abolish, without the consent of the people or corporation to be thereby affected. This results from the very character and object of a county organization, and the political nature of the powers and functions with which it is invested. The creation of such an involuntary and *quasi* corporation belongs to, and is a part of, the general governmental policy of the state, and the powers conferred upon it are given mainly, if not exclusively, for public purposes connected with matters of local administration and concern, and can never become vested as against the sovereign, whose right of control over all its civil, political, and governmental powers is necessarily supreme in the absence of any constitutional limitations. *Com'rs Hamilton Co.* v. *Mighels*, 7 Ohio St. 109 ; *Dartmouth College* v. *Woodward*, 4 Wheaton, 518 ; 1 Dillon, Mun. Corp. §§ 10, 15, 30, 38, 39, and cases cited.

The whole effect of the act under consideration is to reduce the county of Cass from an organized to an unorganized or established county, by taking from it the powers and functions pertaining to its organized existence and transferring them to Crow Wing county, to which it is attached for judicial, record, and taxing purposes, to be held and used by the latter for the benefit of the people of the former, and the public good, as therein provided. This in no way interferes with the established limits of Cass county, nor does it remove its county seat. The locality of the latter still remains unchanged, and is the place for the transaction of the business of the county, whenever the law-making power shall see fit again to invest it with the capacity to act and do business.

It is claimed that the law is defective in omitting to make

any proper provisions for returning and canvassing the votes of the electors of Cass county. Conceding this to be so—as to which, however, no opinion is expressed—the act would not, therefore, be objectionable as one disfranchising the people of that county. Disfranchising an elector is an entirely different thing from that of failing to afford him an opportunity or the means whereby he can enjoy his right of voting in the place where he resides. A person residing outside the limits of an election precinct may not be able, for the time being, to exercise all his rights as an elector, but he is not thereby dispossessed of those rights.

By section 4 of the act " the public records, safes, and office furniture of said Cass county" are required " to be transferred to, and kept in the possession and custody of, Crow Wing county, for the use and benefit, and as the property, of Cass county." This property was held by Cass county, as a public corporation, solely and exclusively for public purposes, concerning chiefly the people of that county, though beneficial in part to the whole state. It may be doubted whether such property, thus held, is private, within the meaning of the constitutional provision which prohibits the taking of private property for public use without compensation. *Darlington* v. *Mayor, etc., of N. Y.*, 31 N. Y. 164. Whether this is so or not, however, is not, and need not be, determined, as the law in question does not propose to appropriate the property to any new or different use, but simply to entrust its care and custody to another public agency for the same public use and purpose; and this clearly violates no clause of the constitution, either in its letter or spirit.

Those provisions of the law which relate to the levy and collection of taxes, specifying their objects and limiting their amount, as well as those providing for a settlement and adjustment of the indebtedness of the county, are strictly germane to the subject of the enactment as expressed

in its title, and do not render it invalid as embracing more than one distinct subject. *Supervisors of Ramsey Co.* v. *Heenan*, 2 Minn. 330.

The law being a valid one, the county commissioners of Cass county had no authority, after its passage, to create any vacancy in the office of county treasurer by removal, nor to fill it by appointment. By the express terms of the act the "functions of all the officers of such county ceased from and after its passage," save as provided by section 10, which merely permits them to continue in office for the period of six months, for the specific purposes therein named, and, of course, with such powers only as are necessary to accomplish those purposes.

The peremptory writ of *mandamus* is denied, and the alternative writ discharged.

GILFILLAN, C. J., *dissenting*. The constitution, art. 11, makes a clear distinction between organized counties and those which are merely established, and not organized. As to the latter, there is no restriction upon the power of the legislature, except that they shall not be reduced below 400 square miles in area. As to the former, no change can be made in the county lines, nor in the location of the county seats, without a vote of the electors of the county or counties to be affected by the change. This distinction is made, clearly, on account of, and for the purpose of protecting, the rights and interests of the people in organized counties. From the time of their full organization the people within a county are a *quasi* corporation—a political community—for the purposes, and with limited powers, of local self-government, and from that time such people are, as a political community, protected by the constitution from changes in their component parts by mere act of the legislature. The letter of that instrument, it is true, prohibits only changes in the county lines; but I think its intent and spirit go further. It would be strange if the constitution, for the purpose of protecting these *quasi* corporations, should prohibit the moving

of a county line a few feet easterly or a few feet westerly, without the consent of the electors, but should allow them to be entirely obliterated, so far as they define the limits of an organized political community, by the abolition of such community. I look upon the abolition of an organized county as a change of the lines of such organized county, within the meaning of the constitution. Besides, there is no prohibition to change the lines of merely established counties, except that they should not be reduced below 400 square miles. Within that restriction the legislature may reduce or enlarge them, may divide one into several, or may unite several into one. And, if the legislature may reduce a county from the condition of an organized to that of an established county, all that is needed, to allow the legislature to do what the constitution prohibits, is to abolish the organization of the counties with respect to which it may desire to exercise the power to change. Counties come under the protection of the constitution from legislative interference with their boundaries as soon as organized; and I do not think that this protection can be removed by mere legislative act. In my opinion the act repealing the act organizing Cass county is unconstitutional.