STATE OF MINNESOTA *ex rel.* S. P. Lindholm *vs.* A. J. PARKER.

STATE OF MINNESOTA *ex rel.* Job K. Hart *vs.* FRANK A. PARKER.

July 29, 1878.

Quo Warranto to test Existence of Office.—Where a man assumes to hold and exercise the duties of a public office, known to the law, and the duties and powers of which are defined by law, an action in the nature of *quo warranto* will lie against him, to test the question whether the office is authorized within the particular district where he assumes to hold and exercise it.

Big Stone County not Organized.—The county of Big Stone is not an organized county, nor entitled to have the office of county auditor or clerk of the district court.

The attorney general on behalf of the state, and on the relation of a citizen and tax-payer of Big Stone county, brought these actions in the district court for Stevens, Big Stone and Traverse counties, to oust and exclude the defendant in the first action from the office of county auditor, and the defendant in the second action from the office of clerk of the district court, of the county of Big Stone. A jury was waived, and the actions tried before *Brown*, J., upon whose findings judgments were entered in each case in favor of the defendant, and the plaintiff appealed.

The facts, as found by the court and admitted by the parties, were as follows: Big Stone county was first established by an act of the legislature, approved February 20, 1862, (Sp. Laws 1862, *c.* 22,) and in Gen. St. (1866) *c.* 8, § 7, the county is again declared to be "established." No organization of the county was attempted until 1873, when a board of three commissioners for the county was appointed by the governor; but nothing was done by them toward organizing the county. On March 27, 1874, the governor appointed and commissioned a board of three commissioners for the county, which board at once appointed a county auditor and county attorney, and filled the other county offices which exist in organized

counties, except that of clerk of the district court.  The commissioners also divided the county into three commissioner districts, and four election districts, and appointed judges of election, justices of the peace and constables, and an assessor, in each election district.  At the general election in 1874, a full set of county officers (including a county auditor and a county attorney) was elected, with the exception of a clerk of the district court; and the persons so elected qualified as such officers, and entered on the performance of the duties of their several offices.  This organization, thus begun, had continued down to the trial of these actions, and there has been no other organization claiming to be a county government, in the county.  At the general election in November, 1876, the defendant in the first action was elected county auditor, and the defendant in the second action clerk of the district court, and they qualified in the manner required by law, and entered on the performance of the duties of their respective offices, and so continued down to the beginning of these actions.

No act of the legislature has been passed expressly organizing, or authorizing the organization of the county, or expressly recognizing the attempted organization by the commissioners appointed by the governor, except so far as this has been done by Sp. Laws 1862, c. 22, and Gen. St. c. 8, § 7, before cited, and by Sp. Laws 1872, c. 53, which was "an act enabling the towns and cities in, and the counties of Morrison, Todd, Stearns,  *  *  *  and Big Stone, to aid in the construction of a railroad from Little Falls, in Morrison county, via Sauk Centre, Glenwood and Morris, to the west boundary of the state, by subscription to the capital stock of any corporation or company building such railroad, or by donations of money or bonds of such towns, cities or counties," etc.

The plaintiff introduced in evidence, upon the trial, the journals of the two houses of the legislature for the years 1873, 1874 and 1875, and showed thereby that bills had been

introduced into the legislature, in each of those years, for the organization of Big Stone county, or the recognition of its attempted organization by the commissioners, none of which bills were passed. The defendant introduced in evidence the written receipts of the state treasurer to the acting treasurer of Big Stone county, for the state taxes of 1875 and 1876; also, evidence that the state auditor notified the acting county auditor of the county of the number of mills to be levied upon the taxable property of the county for each of the years 1874, 1875 and 1876, and that the county auditor thereupon, in compliance with such notice, entered and extended the taxes according to the rate so furnished, upon all the taxable property of the county, as prescribed by law.

The district court held that at the time of the election of the defendants, and at the time these actions were begun, Big Stone county was, for all the purposes of Gen. St. *c.* 8, tit. 3, an organized county; that the offices of county auditor and clerk of the district court existed therein, and that the people of the county had full right and lawful authority to fill such offices by election; that the defendant in each case, having been duly elected to the office he assumed to hold, and having complied with the laws in relation to qualification therefor, was entitled to judgment, which was ordered and entered accordingly in each action, and the plaintiff appealed.

*Geo. P. Wilson,* Attorney General, and *Chas. D. Kerr,* for appellants.

*F. Belfoy* and *H. W. Brown,* for respondents.

GILFILLAN, C. J. These two cases are in the nature of *quo warranto,* one to determine the right of A. J. Parker to hold and exercise the duties of the office of county auditor in the county of Big Stone, the other, to determine the right of F. A. Parker to hold and exercise the duties of the office of clerk of the district court, in the same county. The general question presented is, whether the county of Big Stone is an organized county, and entitled to have a county auditor and clerk of the district court.

The defendants make the preliminary objection, that the action will not lie, for the reason that before an action will lie against any man for usurping public office, there must be such public office as he is charged with usurping; and if Big Stone is not an organized county, there cannot legally be any such office in it as county auditor.   There is much logical force in the objection, and the weight of authority at common law undoubtedly is that the writ of *quo warranto* will not issue to oust a man from an office, unless the office has a legal existence.   We think, however, that the action authorized by the statute has in this respect a more enlarged scope than the writ of *quo warranto* at common law.   The statute authorizes the attorney general to bring an action in the name of the state, "when any person usurps, intrudes into, or unlawfully holds or exercises, any public office, or any franchise within this state, or any office in a corporation created by the authority of this state."   Gen. St. c. 79, § 3.   This provision was taken *verbatim* from the New York code.   In *People* v. *Draper*, 15 N. Y. 532, the court of appeals sustained an action to determine the right of defendants to the office of police commissioners, when the only question involved was, whether the office had any legal existence; and in *People* v. *Carpenter*, 24 N. Y. 86,—which was an action to test the defendant's right to exercise the duties and powers of supervisor of a town, and the only question was, whether the town had been legally created—whether the action was an appropriate one to raise that question, was fully considered by the court of appeals, and the action sustained, the court saying:   "The object of the framers of the code, in the provisions in reference to these actions, manifestly was to provide a speedy and effectual mode of determing the claim of persons to exercise the duties of any office within this state; and the determination of the claims of individuals to discharge the duties of any office would necessarily involve the determination of the existence of the particular office."   If a person should assume to set up and exercise an office not known to the law at all, in

which case his acts would not have any semblance of legal effect, the case might be different. But we have very little doubt, upon the statute, that where a man assumes to hold and exercise the duties of an office known to the law, and the duties and powers of which are defined by law, the action will lie to test the question whether the office is authorized within the particular district for which he assumes to hold and exercise it. The offices of county auditor and clerk of the district court are offices established, and the powers and duties of which are defined, by law, and we think that one who assumes to exercise either, within a county where such an office is not authorized, may be proceeded against under the statute.

The constitution, article 11, recognizes a distinction between organized counties and established counties. The statutes, both before and since the constitution, recognize a distinction. For instance, the Revised Statutes of 1851, *c.* 1, divide the territory into nine counties. Of these, three are declared to be organized counties, "invested with all and singular the rights, privileges and immunities to which all organized counties in the territory shall be and are by law entitled;" one is declared to be organized after January 1, 1852, and five are declared organized only for the appointment of justices of the peace, constables, and such other judicial and ministerial offices as may be specially provided for. All through the acts of the legislature, the usual formula in declaring an established county is, "So much of the territory (or state) as is embraced in the following boundaries, be and the same is hereby established as the county of ———," and in declaring an organized county, "that the county of ——— be and the same is hereby declared to be organized, with all and singular the rights, privileges, and immunities, to which all organized counties in this territory (or state) are entitled by law."

This court, in *State* v. *McFadden*, 23 Minn. 40, defines the distinction between organized and established counties, by stating, in effect, that the establishing of a county is the setting apart of certain territory to be in the future organized as

a political community, or *quasi* corporation for political purposes; and the organizing of a county is the vesting in the people of such territory such corporate rights and powers.

The establishing and organizing of counties is left (with some restrictions as to boundaries) wholly with the legislature, and, until some act of the legislature authorizing it, the people of no district have the right to act as an organized county.

It is conceded that the county of Big Stone has never been expressly declared by the legislature to be an organized county, and that there has never been an express legislative grant to the people of that county of the right to elect the officers in question. But it is claimed that by reason of the provisions of Gen. St. c. 8, tit. 3, Big Stone, as well as all other counties in the state, was recognized as organized. That chapter is entitled, "Counties and County Officers." Title 1 divides the state into seventy-three counties, naming them, and devotes a section to each county. The formula as to every county is the same: "The county of —— is established and bounded as follows." The names and boundaries of counties, as previously existing, are generally, if not in all cases, preserved. Some of the counties named were previously organized, and others only established counties. Title 2 is entitled, "Organization, Powers and Duties." It provides that "each organized county within this state is a body politic and corporate, and, as such, empowered to act for the following purposes." Then follows the power to sue and be sued; to purchase, hold and convey property; to make contracts; and provisions in regard to county buildings, to the manner of suing and being sued, and of determining claims against the county. The fact that some counties are organized, and others are not, is frequently recognized throughout the chapter as distinctly as in title 2. Title 3, relied on by defendants as by implication or recognition organizing all the counties in the state, is entitled, "County Commissioners." The first section provides, "Every county shall be deemed an organized

county for the purposes of this title, and shall have a board of county commissioners," prescribes how many there shall be, and their terms of office. The subsequent sections of the title relate to the mode of election or appointment of county commissioners, and their powers and duties. The title provides for the election or appointment of assessors, judges of election, and justices of the peace, but does not expressly provide that there shall be any county officer other than county commissioners. In prescribing the powers and duties of the commissioners, the title frequently refers to other officers, such as auditor, treasurer, sheriff, clerk of the district court, etc., and from these references it is argued that each of the counties mentioned in the title must have those officers.

Following this title are ten others, providing for and prescribing the powers and duties of other county officers. Title 4 provides for and regulates the powers and duties of county auditors, title 5, of county treasurers, and so through the chapter, each title being devoted to one county officer. From the peculiar phraseology in some of these titles, a doubt might be raised whether it was not intended to provide for some of these officers—such, for instance, as county treasurer, register of deeds, and sheriff—in all counties, whether organized or not. But the language used in others—as in title 4, "There shall be elected, in each organized county, a county auditor;" in title 8, "There shall be elected, in each county organized for judicial purposes, a county attorney;" in titles 10 and 12, providing for court commissioner and coroner in each organized county—clearly recognizes the distinction between organized and unorganized counties. From the tenor of the entire chapter, we conclude that it was not the intention, in title 3, to organize all the counties, except so far as was done by entitling each county to a board of county commissioners, nor to provide that each county should have all the officers referred to in the title. In prescribing all the powers and duties of county commissioners in both organized and unorganized counties, it was necessary, in order to cover the whole

ground, to mention other officers which some counties would have. The provisions as to the powers and duties of the commissioners, in respect to officers mentioned in the title, are operative where those offices exist.

From the conclusion at which we have arrived, it follows that Big Stone is not an organized county, and is not entitled to the officers in question. The acts of state officers are referred to as recognizing the existence of Big Stone as an organized county; but the legislature alone is competent to affect the status of a county.

Judgment in each case is reversed, and judgments will be entered as prayed for in the complaints.