ELIZABETH D. SMITH and others *vs.* MALKOM ANDERSON.

December 22, 1884.

**Unorganized County—Record of Deeds.**—Under Laws 1870, *c.* 56, re-enacted in Laws 1875, *c.* 51, (Gen. St. 1878, *c.* 40, § 21,) deeds of lands in counties established, but not generally organized, were properly recorded and recordable in the counties to which such counties were attached for judicial purposes. Under this statute a record in 1869 in Meeker county, of lands in Kandiyohi county, is good.

**Kandiyohi County—Organization.**—Sp. Laws 1869, *c.* 75, did not have the effect to organize Kandiyohi county *generally.*

The plaintiffs, claiming to be the owners of certain vacant and un-occupied land in Kandiyohi county, brought this action in the district court for that county, to determine the adverse claims of the defend-ant thereto. The defendant answered, alleging title in himself. The action was tried by *Brown*, J., without a jury, and judgment was ordered and entered for the plaintiffs, from which the defendant appeals.

The facts as found by the court are as follows: On August 1, 1860, one Michael Renville, the common source of title, received a patent from the United States of the land in dispute. On March 9, 1861, Renville and wife, by warranty deed, conveyed to one Daniel Buck, which deed was recorded in Meeker county on September 8, 1869, and in Kandiyohi county on July 26, 1880. The plaintiffs have acquired, by mesne conveyances, the title of Buck. On February 12, 1873, Renville executed, by attorney, another conveyance of the same land to one Jonas Lonn, which conveyance was recorded in Kandi-yohi county on February 17, 1873. The defendant has acquired the title of Lonn by mesne conveyances, and also claims under an alleged tax-deed made on July 8, 1870, by George W. Olney, as deputy county auditor of Kandiyohi county. The court further found that defend-ant, at the time he acquired the title of Lonn, had no knowledge or actual notice of the deed from Renville to Buck, or of the claims of plaintiffs.

As conclusions of law the court held that Kandiyohi county was never organized till 1871, under Laws 1870, *c*. 92, and that therefore the record, in Meeker county, of the deed from Renville and wife to Buck was valid under Laws 1870, *c*. 56; that the alleged tax deed was void, as the office of county auditor did not exist in Kandiyohi county till Laws 1870, *c*. 92, took effect in 1871, and that plaintiffs are the owners of the land in dispute.

*John W. Arctander*, for appellant.

*S. A. Plumley*, for respondents.

BERRY, J. The authority to "establish and organize new counties" is by article 11 of our constitution committed to the legislature. *State* v. *Parker*, 25 Minn. 215. Kandiyohi county was *established*— that is to say, its boundaries were marked out—(*State* v. *McFadden*,

23 Minn. 40) in 1866. Gen. St. (1866,) *c.* 8, § 31. We are referred to no act of the legislature, and we find none, organizing said county, prior to chapter 92 of the Laws of 1870, except so far as an organization is provided for by the first section of Gen. St. (1866,) *c.* 8, title 3. This section declares that "every county shall be deemed an organized county for the purposes of this title," (which relates to county commissioners,) "and shall have a board of county commissioners." The effect of this section was considered in *State* v. *Parker*, 25 Minn. 215, where it was held (p. 221,) "that it was not the intention in title 3 to organize all the counties, except so far as was done by entitling each county to a board of county commissioners, nor to provide that each county should have all the officers referred to in the title," such as county auditor, register of deeds, etc. And in that case it was accordingly held that the *established* county of Big Stone was not an *organized* county, except in the restricted sense above indicated, and therefore not "entitled to have" a county auditor or clerk of the district court.

It follows that, prior to the act of 1870, Kandiyohi, being simply an *established* county, was in the same *status* as Big Stone county, and therefore, while *organized* in the limited sense mentioned, it was not organized generally, or to the extent of entitling it to a register of deeds or other county officers except county commissioners. See, also, Op. Attys. Gen. 415. Not being entitled to a register of deeds, it was not organized for purposes of registration, and hence, prior to 1870, when it was organized generally, there was no place or authority under our registration laws for recording in that county a deed of real estate.

So far as we discover, there was no statutory authority for recording a deed of land situate in an unorganized county anywhere until the passage of chapter 56, Laws 1870, subsequently re-enacted in 1875, (chapter 51, § 2; Gen. St. 1878, *c.* 40, § 21.) That chapter (Laws 1870, *c.* 56,) provides that deeds of "real estate situate in any unorganized county may be recorded in the county to which such unorganized county is attached for judicial purposes, and records of such instruments which have or shall be so made shall have the same effect as if recorded in the county where the premises are situated;" mean-

ing, of course, provided the latter county was the proper county in which to record. This statute is, in terms, retrospective as well as prospective, and hence a deed, as in this case, of lands in Kandiyohi county, was, on September 8, 1869, properly recordable in Meeker county, to which Kandiyohi was at that time attached for judicial purposes.

In opposition to this conclusion it is claimed that Kandiyohi county was organized generally by Sp. Laws 1869, *c.* 75, which enacts "that the present municipal organization of Kandiyohi county, by the appointment by the governor on the twenty-sixth day of October, A. D. one thousand eight hundred and sixty-six, of O. C. Hart, A. M. Eklund, and Louis S. Molen, as commissioners, and continued by their successors in office, and all the acts of said commissioners under and by virtue of said appointment, are hereby legalized, and declared to be valid and of binding force." We agree with the trial judge that this act "could not have been intended as an act organizing the county; that nothing is attempted to be legalized but the acts of the county commissioners, and none of these acts are shown to affect the question here involved, or to have any reference thereto." This is all the more apparent when it is considered that, though the governor was authorized to appoint county commissioners, under certain circumstances, in a county simply *established*, (Gen. St. 1866, *c.* 8, § 87,) such counties were not, under the doctrine of *State* v. *Parker*, *supra*, entitled to other county officers, and hence the county commissioners of such county were not authorized to appoint them. It would follow, not only that it is not to be presumed that the commissioners mentioned in the act attempted to make any such appointments, but further, that any such attempts would not have been, in the words of the statute, "acts of said commissioners under and by virtue of [their] said appointment," but wholly outside of it, and unauthorized by it by any construction whatever.

As the foregoing views dispose of the only question before us adversely to the appellants, the judgment is affirmed.