FIRST NATIONAL BANK OF DETROIT v. BOARD OF COUNTY COM-
MISSIONERS OF BELTRAMI COUNTY.

|    |    |
|----|----|
| 77 | 43 |
| f81 | 96 |

June 19, 1899.

Nos. 11,538—(79).

**Unorganized County—Indebtedness.**

An organized county has no power to create an indebtedness against an unorganized county, attached to it for judicial and other purposes, which will be a valid obligation or indebtedness against the latter county as a municipality, when it thereafter comes into being by organization.

Action in the district court for Ramsey county to recover $7,757.-56 on orders drawn by the treasurer of Becker county payable out of money in the treasury of Beltrami county not otherwise appropriated. From an order, Otis, J., sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*C. D. & Thos. D. O'Brien,* for appellant.

*W. F. Street,* County Attorney, and *Owen Morris,* for respondent.

MITCHELL, J.

The county of Beltrami, being an "established," but not an "organized," county, was, by Sp. Laws 1871, c. 75, annexed to Becker county for judicial and record purposes, and so continued until May, 1897, when it became an organized county. As to the status of "established" counties in this state, and their relation to the organized counties to which they are attached for judicial and other purposes, see State v. McFadden, 23 Minn. 40; State v. Parker, 25 Minn. 215; Smith v. Anderson, 33 Minn. 25, 21 N. W. 841. "Establishing" a county is merely the setting apart of certain territory to be in the future organized as a municipal corporation or quasi corporation for political purposes, while "organizing" a county is the vesting of the people of such territory with such corporate rights and powers. The statute provides that every county, whether organized or unorganized, shall have a board of county commissioners, which is given certain limited powers, as, for example, to establish school districts, organize road districts, etc. G. S. 1894, §§ 657, 702 et seq. But this does not constitute

the "established" county an "organized" county, or a quasi municipal corporation, or vest its inhabitants with any corporate rights or powers, except to the limited extent thereby expressly provided. State v. Parker, supra; Smith v. Anderson, supra. Except as thus otherwise provided, the "established" county is merely territory set apart for a future, and not as a present, county, but which, until it becomes organized, is to be governed, as respects county matters, by the officers of the organized county to which it is attached.

This action was brought against Beltrami county on a large number of orders drawn by the auditor of Becker county on the treasurer of that county, payable "out of the money in the treasury of Beltrami county not otherwise appropriated." These orders were issued from 1891 to 1897, while Beltrami was still merely an "established" county attached to Becker county. The complaint, after alleging the execution of these orders, further alleges that they were each and all

"Issued for services rendered to the said country of Beltrami, and for salaries due by the said county of Beltrami for the services rendered and described and referred to in each of said causes of action, and that each and all of said orders so described in each of the foregoing causes of action, at the time of the issuance of the same, constituted and were valid, legal claims and demands against the said county of Beltrami";

Also that payment was demanded of the treasurer of Becker county, as ex officio treasurer of Beltrami county, while the latter county was still unorganized, and to its treasurer after its organization, but that payment was refused. The relief asked is for a money judgment for the amount of the orders and interest against Beltrami county.

The trial judge sustained a general demurrer to the complaint for the reasons, as stated in his memorandum, that the contracts set out in the complaint, at the time they were made, were, if binding at all, obligations of Becker county, for at that time the county of Beltrami had no corporate existence, and for taxable purposes was a part of Becker county; that, after defendant's incorporation, it never assumed this indebtedness or obligation of payment, nor was it imposed upon defendant by legislation.

Without stopping to consider whether all the reasons given by the learned judge are strictly correct, we are satisfied that his conclusion was correct, and was placed substantially on the right ground. The real question presented is whether, while an unorganized or "established" county is thus attached to an organized county, the organized county can create an indebtedness, for purposes which, as between the two counties, should be a charge against the property in the unorganized county, which will become and be a valid claim or indebtedness against the latter as a quasi corporation, when it comes into actual being by organization.

Counsel for the defendant cite numerous cases, among others State v. City of Lake City & Town of Lake, 25 Minn. 404, and City of Winona v. School District No. 82, Winona Co., 40 Minn. 13, 41 N. W. 539, to the familiar proposition that, upon the division of a municipality by the creation of a new one out of part of its territory, the old corporation is liable for and must pay all the corporate indebtedness, and that the new corporation will not be liable for any part of it, unless otherwise provided by statute. These authorities are not in point. The county of Beltrami was not created out of the territory of the county of Becker. The territory composing the former never was, in any proper sense, a part of the latter. It was merely temporarily attached to it, for certain political or governmental purposes.

The legislation defining and regulating the relations of an organized county to an unorganized county attached to it, and the rights, liabilities, and remedies of the one against the other, or of third parties against either, is apparently very incomplete, or, at least, indefinite. The only statute we can find bearing upon the question now in hand is G. S. 1894, § 1665, which reads as follows:

"That hereafter taxes shall be levied and collected in all unorganized counties in this state, by the counties to which they may be attached for judicial and record purposes, only for state purposes, for the payment of the principal and interest of any legal indebtedness of such unorganized counties, and a reasonable sum per annum as compensation for the county to which such unorganized counties are attached; provided, that such annual compensation for the levy and collection of taxes, and for all other expenses, shall not exceed the aggregate sum of 10 mills per acre of

land subject to taxation in such unorganized counties, the amount of said compensation to be extended uniformly upon the taxable property of such counties according to the assessed valuation thereof."

Laws 1853, c. 11, § 15, cited by counsel, was expressly repealed by G. S. 1866, c. 122.

Plaintiff's counsel contend that inasmuch as section 1665 authorizes an organized county to levy taxes in an unorganized county attached to it, for the payment of the indebtedness of the latter, therefore it follows, by implication, that the organized county can create an indebtedness against the unorganized county. The inference is not justifiable.

It does not follow from the fact that such indebtedness may, under some circumstances, exist, that, therefore, the organized county has the power to create it. An organized county which has incurred indebtedness may be thereafter disorganized and attached to some other county. Such was the fact in the case of Cass county. Laws 1872, c. 79; Sp. Laws 1876, c. 208. Section 1665 clearly contemplates that an organized county is entitled to and shall receive a reasonable compensation for the extra expense of its county government resulting from the territory of an unorganized county being attached to it. It also provides a method by which it may obtain compensation, to wit, by levying an annual tax for that purpose on the taxable property in the unorganized county, but not to exceed 10 mills per acre.

Whether the organized county is absolutely liable for all the expenses incurred on account of the attached county, or whether, as to such expenses, it is merely accountable as trustee to the extent of the funds which it has received from a 10-mill tax levied on the unorganized county, and whether the 10-mill tax is the exclusive means of obtaining, and the limit of, the compensation to the organized county, and also what remedy, if any, there is against the unorganized county in favor of creditors holding claims incurred by the organized county on account of the former, are important, and, in view of the incomplete legislation on the subject, quite difficult, questions, upon which we are asked by counsel to express our opinion. But in view of the facts that Becker county is not repre-

sented in, or a party to, this action, and that these questions have not been argued by counsel to any extent, we would not feel justified in deciding more than is necessary to dispose of this appeal.

However, for the purpose of aiding counsel in future investigation of the subject, we will make a few suggestions. It seems to us very clear that the statute contemplates that the proper officers of the organized county are the persons whose duty and authority it is to apportion the expenses of county government between the two counties, and to determine what part of it is properly chargeable to the property in the unorganized county, and for that purpose they should keep proper accounts to show the facts; also that, if the organized county is merely liable as trustee, as above suggested, it no doubt could be compelled to account as such, and show how much it has received, and how much it has expended, on account of the unorganized county; also that, inasmuch as the amount of the tax, as limited by the statute, which may be levied in the unorganized county, might be very much less than its proportion of the expense of the county government, it is at least a serious question whether to hold that the organized county is absolutely liable for all the expenses incurred on account of the unorganized county, without regard to the amount of compensation or reimbursement which it had received, would not conflict with the constitutional requirement that taxation shall be uniform and equal; also that, if creditors holding claims like those held by the plaintiff have any remedy against the unorganized county after it becomes organized, it must be by mandamus, to compel the county commissioners to continue the levy of the 10-mill tax on the property within its limits for the purpose of paying the claims. The powers of counties, like other municipalities, are strictly and purely statutory, and we can find no authority in any statute for an organized county creating an indebtedness against an unorganized or "established" county (which is therefore not yet in being as a legal entity) which will be a debt or obligation against the county as such when it comes into being in the future, as a quasi municipal corporation. That disposes of the case, and the order sustaining the demurrer must be affirmed.

In conclusion, we may suggest that the difficulties surrounding

this subject mainly grow out of the limitation on the amount of tax which can be levied on property in the unorganized county to compensate the organized county to which it is attached,—a limitation which was undoubtedly inserted for the benefit of landowners in unorganized counties.

Order affirmed