## WILLIAM MURRAY v. N. DAVIS.

### (128 N. W. 305.)

**Counties — Division — Legislative Question.**

1. All matters pertaining to a division of counties are purely legislative questions unless regulated by constitutional provisions.

**Counties — Division — Election — Legal Existence of New County.**

2. On the question of the division of counties, as governed by §§ 2329, 2330, and 2331, Rev. Codes 1905, the election under § 2329 does not confer a legal existence on the new or proposed county.

**Counties — Division — Legal Existence — Appointment of Commissioners.**

3. Under § 2330, a legal existence is not conferred upon such new county until after the governor has appointed commissioners, and they have accepted and qualified as such.

**Voters and Elections — Division of Counties — Organization of new Counties.**

4. Until such county commissioners qualify, voters residing in a proposed new county are legal voters of the county about to be divided, and can legally vote on all matters pertaining to that county.

Opinion filed October 21, 1910.

Appeal from the District Court of Ward county; *Kneeshaw, J.*

Note.—Dividing counties by legislative authority, see notes in 35 Am. St. Rep. 539; and 85 Am. Dec. 101.

Organization of new counties, see note in 20 Am. St. Rep. 680.

Contest of a primary election for a nomination to the office of county judge. Judgment for contestee. Contestant appeals.

Affirmed.

*Geo. A. McGee* and *H. J. Schull,* for appellant.

*Palda, Aaker, Greene & Kelso,* for respondent.

MORGAN, Ch. J. The contestant and contestee were rival candidates for a nomination to the office of county judge of Ward county, at the primary election of June 29, 1910. The district court gave judgment in favor of the contestee, and Murray has appealed. The question presented is the right of persons residing within the now existing and organized counties of Burke and Renville to vote at that election.

The stipulated facts are: In November, 1908, at the general election held in Ward county, propositions were submitted to a vote on the question whether that county should be divided and the counties of Burke and Renville formed out of part of the territory then comprising it. The election was regularly held, and resulted, according to the official canvass, against a division of the county. The result of this election was contested by residents of the proposed counties of Burke and Renville, and judgments of the district court of Ward county were therein entered, to the effect that the proposition to divide Ward county had not carried, and the contests dismissed. These judgments were each appealed to this court, and on June 3, 1910, a decision was rendered on each of said appeals, whereby said judgments of the district court were reversed, and the propositions submitted at the 1908 election as to the division of Ward county were adjudged to have been duly carried.

After the filing of a remittitur from the supreme court in the district court of Ward county, and on June 8, 1910, district court ordered judgment to be entered pursuant to said remittitur, and judgment was accordingly entered on that day.

On July 15, 1910, the governor of the state duly appointed county commissioners for each of said Burke and Renville counties, and said commissioners duly qualified by taking the required oath, on July 22, 1910. The primary election out of which these contests grow was held in Ward county on July 29, 1910. Prior to that day the county auditor of Ward county had distributed ballots to be voted at said primary,

21 N. D.—5.

election, and caused them to be delivered at all the voting precincts of said county, including the precincts within the territory now comprising the counties of Burke & Renville. These ballots were voted in the now existing counties of Burke and Renville, and the precinct officers of these two counties duly certified and returned the result of such election to the county auditor of Ward county, and the returns of the election in these precincts of Burke and Renville counties were duly canvassed by the canvassing officers of ward county, and included in determining what officers had been nominated in Ward county.

If the returns from these precincts were legally canvassed, the contestee was duly nominated. If they were not legally counted, the contestant was duly nominated, and the judgment of the district court was erroneous.

It will be seen that the question before us is whether voters in the territory now embraced within Burke and Renville counties were legal voters at that election for officers of Ward county, before the county commissioners were appointed, which was not done until after the primary election had been held. This involves the question whether these new counties were given a legal existence as such by the election of 1908, or by virtue of the appointment and qualification of the commissioners. If the election gave them a legal existence, it became effectual in November, 1908, as the final decision of the courts only declared the legal effect and results of that election, and it conferred and could properly confer no right to the electors of such counties except such as arose out of such election and the statutes governing the same.

The question of the creation and division of counties is purely a legislative one, unless regulated by the Constitution. The common law has no application thereto. Hence the rights of these parties must be determined by existing statutes, there being no constitutional provisions that affect them. The section of the Code that must control this question is the following, being a part of the chapter governing the division of counties: "If it shall appear that the majority of all the votes cast at such election in each of the counties, proposed new counties, and the remaining part of the county or counties interested is in favor of the formation of such new county, the county auditor of each of such counties shall certify the name, territorial contents, and boundaries of such new county, whereupon the secretary of state shall notify the

governor of the result of such election, whose duty it shall be to appoint three persons, residents of the county so formed, possessing the qualifications of electors, who will accept and qualify in such office, county commissioners for such new counties, who shall hold their office until the first general election thereafter, and until their successors are elected and qualified; and upon the qualifying of such commissioners, such county shall be deemed to have existence as such, and be governed by the laws of the state relating to counties." Rev. Codes 1905, § 2330.

The latter portion of this section is directly applicable, and specifically states when the county comes into existence as a matter of law. It is upon the qualifying of the commissioners. The word "upon" in this connection means after or following, and the section makes the qualifying of the commissioners a condition precedent to clothing the new county with legal existence. The appellant contends that it was the legislative intention in enacting said § 2330, that the word "counties" at the end of the section should be construed to mean organized counties. If this contention be conceded, we do not see how it would affect the question under consideration. The question here is, What was the status of the voters on the proposed new counties, when the primary election was held, and not the status of the county after the commissioners qualified? We think it a fair construction of that section that this county had no existence as a governmental agency of the state until the commissioners qualified.

The appellant contends that the word "formed," in this section, means the same as organized. We do not think so. In that connection the word "formed" means, and relates only to the area of the county, and that division has been determined on and established, so far as the election was concerned. It has no reference to a county equipped with means of government. That word in the connection used does not mean that the election actually disorganized that territory, in view of the language following, that legal existence is conferred after the commissioners are qualified to act. It does not seem that the legislature intended that this territory should be disorganized and the voters disfranchised, until it became a legal entity. It would require clear and express language before such consequences should be visited upon that territory. It would mean that it has no existence or local government, and that the recording acts and criminal statutes

would not apply during the time between the election and the complete organization of the counties. In this case that time was about eighteen months. If such was the intention, it would have been easy to express it.

The fact that this construction of the statute renders it possible for voters in similar cases to participate in the nomination of officers to be elected while such voters had no interest in the matter, inasmuch as territorial conditions make it such that the voters would not be qualified to vote at a subsequent election, does not seem to us important. The question is, Who were legal voters when the primary was held? There is no other time to be fixed as a test of the legality of the voters except the time of voting, regardless of what might happen thereafter.

Appellant relies on State ex rel. Slipp v. McFadden, 23 Minn. 40; Meehan v. Zeh, 77 Minn. 63, 79 N. W. 655; and Carleton v. People, 10 Mich. 250. None of these cases was based upon similar facts or like statutes, and there is nothing decided in them at variance with our conclusion in this case.

Appellant urges that the election, if in favor of division, can determine when these counties were segregated from Ward county, so far as the right to vote on matters pertaining to Ward County are concerned. If not so held, he contends that to permit the voters in these new counties to vote on Ward county matters at the primary was an injustice to Ward county, as the voters in these counties could have no interest in Ward county matters, in view of the fact that complete division was imminent. The paramount question in this case is whether these voters were legal voters when the primary election was held. This is a question of the construction of an unambiguous statute. If hardship and injustice may follow the operation of the statute in this regard, it is not for the courts to disregard the statute for that reason. This territory was part of Ward county when these votes were cast, and therefrom it follows that the judgment of the District Court must be affirmed. All concur.